```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
      * * * * * * * * * * * * * * *    )
 3    UNITED STATES OF AMERICA,        )    Criminal Action
                                       )     No. 20-00157
 4                    Plaintiff,       )
                                       )
 5        vs.                          )
                                       )
 6    SHEMARA SHAY MACK-SMITH,         )    Washington, D.C.
                                       )    May 19, 2023
 7                    Defendant.       )    2:05 p.m.
                                       )
 8    * * * * * * * * * * * * * * *    )

 9

10                  TRANSCRIPT OF SENTENCING HEARING
              BEFORE THE HONORABLE TREVOR N. McFADDEN,
11                  UNITED STATES DISTRICT JUDGE

12

13    APPEARANCES:

14    FOR THE GOVERNMENT:       AMY E. LARSON, ESQ.
                                JOCELYN P. BOND, ESQ.
15                              UNITED STATES ATTORNEY'S OFFICE
                                  FOR THE DISTRICT OF COLUMBIA
16                              555 Fourth Street, Northwest
                                Eleventh Floor
17                              Washington, D.C. 20530

18    FOR THE DEFENDANT:        MARK JOHN CARROLL, ESQ.
                                MARK JOHN CARROLL, P.C.
19                              39641 Tern Road
                                Bethany Beach, Delaware 19930
20
      FOR U.S. PROBATION:       KELLI WILLETT
21
      REPORTED BY:              LISA EDWARDS, RDR, CRR
22                              Official Court Reporter
                                United States District Court for the
23                                District of Columbia
                                333 Constitution Avenue, Northwest
24                              Room 6706
                                Washington, D.C. 20001
25                              (202) 354-3269
```

1           THE COURTROOM DEPUTY:  This is Criminal Case

2    20-157, the United States of America versus Shemara Shay

3    Mack-Smith.

4           From Probation, Officer Kelli Willett.

5           Counsel, please come forward to identify

6    yourselves for the record, starting with the Government.

7           MS. LARSON:  Good afternoon, your Honor.  Amy

8    Larson for the United States.  With me today is my

9    colleague, AUSA Jocelyn Bond.

10          THE COURT:  Good afternoon, ladies.

11          MR. CARROLL:  Good afternoon, your Honor.  Mark

12   Carroll on behalf of Ms. Mack-Smith, who's in the courtroom.

13   And also in the courtroom is her grandmother, Mrs. Mack, and

14   her husband, Mr. James Smith.

15          THE COURT:  Good afternoon, Mr. Carroll.

16          Good afternoon, Ms. Mack.

17          And good afternoon, folks.

18          We're here for the sentencing of the Defendant,

19   Shemara Shay Mack-Smith, who pled guilty to one count of

20   distribution of child pornography in violation of 18 USC

21   2252(a)(2).

22          I have received and reviewed the presentence

23   investigation report and sentencing recommendation from the

24   probation office as well as sentencing memoranda from the

25   Government and defense.

1              I've also reviewed letters in support of the

2     Defendant and the Government has also submitted a victim

3     impact statement, a restitution request and a JSIN document

4     about sentencing of offenders under this guideline.  I've

5     reviewed the report prepared by Dr. Flowers.

6              Are there any other documents or materials that I

7     should have reviewed?  Ms. Larson?

8              MS. LARSON:  No, Judge.

9              THE COURT:  And Mr. Carroll?

10             MR. CARROLL:  No, your Honor.

11             THE COURT:  Ms. Larson, I think the courtroom is

12    sealed.  Is that still appropriate at this point?

13    ████████████████████████████████████████████████

14    ████████████████████████

15    ████████████████████████████████████████████████

16    ██████████████████████████████████████████████████████

17    █████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████

19    ████████████████████████████████████████████████████████████

20    █████████████████████████████████████████████████████████████████

21    ██████████

22    █████████████████████████████████████████████████████████

23    ███████████

24    ████████████████████████████████████

25    ███████████████████████████████████████████████████

4



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24          MR. CARROLL:  Okay.  Very well.
25          THE COURT:  So I'm going to unseal the courtroom

1    at this point and unseal the case.  I'll ask the attorneys

2    to work together in the next couple weeks to figure out

3    what, if any, documents we should be unsealing at this

4    point.

5    ███████████████████████████████████████████████

6    ███████████████████████████████████████████████

7    ████████████████████

8          But from this point forward, we'll be unsealed for

9    this transcript, Ms. Edwards, unless I say otherwise.

10          Ms. Mack-Smith, this sentencing hearing will

11    proceed in four steps, many of which may seem a bit

12    mechanical to you.  But I want you to keep in mind why we're

13    here today and the gravity of the situation:  You've

14    committed a federal crime.  Today's proceeding is a serious

15    matter, as it is about the consequences that you will face

16    because of your decision to engage in criminal behavior in

17    violation of federal law.

18          Ma'am, the first step of today's hearing is for me

19    to determine whether you've reviewed the presentence

20    investigation report and whether there are any outstanding

21    objections to it and, if so, to resolve those objections.

22          The second step is to determine what sentencing

23    guidelines and sentencing range applies to your case based

24    upon your criminal history and considering any mitigating or

25    aggravating factors that may warrant a departure under the

1    sentencing guidelines manual.

2             The third step is to hear from the Government,

3    from your attorney and you, ma'am, if you wish to be heard

4    about sentencing in this case.

5             And the last step requires the Court to fashion a

6    just and fair sentence in light of the factors Congress set

7    forth in 18 USC 3553(a).  As part of this last step, the

8    Court will actually impose the sentence along with the other

9    required consequences of the offense.

10            So turning to that first step, Probation filed its

11   final presentence investigation report and sentencing

12   recommendation on May 3rd.  Ms. Mack-Smith filed her

13   memorandum in aid of sentencing on May 11th and the

14   Government filed its memorandum shortly thereafter.

15            Does the Government have any objection to any of

16   the factual determinations set forth in the presentence

17   report?

18            MS. LARSON:  No, your Honor.

19            THE COURT:  Mr. Carroll, have you and

20   Ms. Mack-Smith read and discussed the presentence report?

21            MR. CARROLL:  Yes, we have, your Honor.

22            THE COURT:  Does the Defendant have any objection

23   to any of the factual determinations set forth in it?

24            MR. CARROLL:  No, she doesn't, your Honor.  And

25   any objections we had, Ms. Willett corrected them.

1                    THE COURT:  Great.

2                    And, Ms. Mack-Smith, if you could approach the

3          podium, ma'am.

4                    Ma'am, are you fully satisfied with your attorney

5          in this case?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  Do you feel you've had enough time to

8          talk with him about the probation office's presentence

9          report and the papers the Government filed in connection

10         with sentencing?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  Thank you.  You may have a seat,

13         ma'am.

14                   The Court will accept the facts as stated in the

15         presentence report.  The presentence report will serve as my

16         findings of fact for purposes of this sentencing.

17                   And my thanks to Officer Willett for her work on

18         this case.

19                   THE PROBATION OFFICER:  Thank you, your Honor.

20                   THE COURT:  The presentence report lays out the

21         probation office's calculation of the advisory guideline

22         range that applies in this case.  I will attempt to

23         summarize it as follows:

24                   First, the guideline for distribution of child

25         pornography in violation of 18 USC 2252(a)(2) is found in

1   2G2.2 of the guidelines manual.  That section provides that

2   the base offense level is 22.

3           The offense here carries with it some

4   enhancements.  Because the crime involved depictions of

5   minors under the age of 12, the guideline imposes a

6   two-level enhancement.  Additionally, 2G2.2(b)(3)(F) imposes

7   a two-level enhancement because the Defendant knowingly

8   engaged in the distribution of child pornography.

9           And because the offense involved material

10  portraying sadistic or masochistic conduct or other

11  depictions of violence plus the sexual abuse of an infant or

12  toddler, the guideline imposes a four-level enhancement.

13          Next, because the offense involved the use of a

14  computer for the possession, transmission, receipt or

15  distribution of material, the guideline imposes a two-level

16  enhancement.

17          Finally, because the offense involved 600 images

18  of child pornography or more, five levels are applied.

19          By her guilty plea, Ms. Mack-Smith has accepted

20  responsibility for her offense.  That entitles her to a

21  two-level reduction.  And she's assisted authorities in

22  their investigation, entitling her to an additional

23  one-level decrease under 3E1.1.

24          Therefore, prior to the consideration of any

25  departures or variances, Ms. Mack-Smith's total offense

1   level is 34.

2            Is there any objection to the calculation of this

3   offense level?  Ms. Larson?

4            MS. LARSON:  No, Judge.

5            THE COURT:  And Mr. Carroll?

6            MR. CARROLL:  No, your Honor.

7            THE COURT:  Ms. Mack-Smith has no prior criminal

8   history, meaning she's in Criminal History Category I.  So

9   with a total offense level of 34 and a criminal history

10  category of 1, the applicable guideline range is 151 to 188

11  months, with a fine range of $35,000 to $250,000.

12           Looking to the remaining applicable penalties,

13  under the statute, the minimum prison term the Court may

14  impose is five years and the maximum term is 20 years.  The

15  maximum fine for this offense is $250,000, and the Court may

16  impose a term of supervised release of five years to life.

17           There's also a mandatory special assessment of

18  $100.

19           The Defendant is ineligible for probation.

20  Restitution is mandatory in this case.  I understand the

21  Government is requesting $5,000 for one of the minor

22  victims.

23           Have I accurately stated the statutory framework

24  under which we are operating in regard to this case?

25  Ms. Larson?

 1              MS. LARSON:  Yes, your Honor.

 2              THE COURT:  Do you agree with those guidelines as

 3     well?

 4              MS. LARSON:  Yes, Judge.

 5              THE COURT:  And the same question for you,

 6     Mr. Carroll.

 7              MR. CARROLL:  Yes, your Honor.

 8              THE COURT:  Having determined the applicable

 9     guidelines sentence, the next step is for the Court to

10     consider departures from the guidelines.  The presentence

11     report does not include any departure grounds and I don't

12     believe the parties have identified any.

13              Am I correct that neither party is requesting a

14     departure as opposed to a variance here?  Ms. Larson?

15              MS. LARSON:  That is correct, Judge.

16              THE COURT:  Mr. Carroll?

17              MR. CARROLL:  That is correct, your Honor.

18              THE COURT:  Before I discuss the other sentencing

19     factors that will bear on the Court's final decision, I will

20     at this point share with the parties the sentence the

21     probation office has recommended, taking into account the

22     advisory guidelines sentence, the available sentences and

23     all of the factors listed in Section 3553(a).

24              The probation office has recommended a sentence of

25     78 months' incarceration, 120 months of supervised release

1    and a special assessment of $100.

2           The recommendation of the probation office is

3    based solely on the facts and circumstances contained in

4    this report.

5           I must now consider the relevant factors that

6    Congress set out in 18 USC 3553(a) to ensure that the Court

7    imposes a sentence that is sufficient but not greater than

8    necessary to comply with the purposes of sentencing.  These

9    purposes include the need for the sentence imposed to

10   reflect the seriousness of the offense, promote respect for

11   the law and to provide just punishment for the offense.  The

12   sentence should also afford adequate deterrence to criminal

13   conduct, protect the public from future crimes of the

14   Defendant and promote rehabilitation.

15          In addition to the guidelines and policy

16   statements, I must consider the nature and circumstances of

17   the offense, the history and characteristics of the

18   Defendant, the need for the sentence imposed, the guideline

19   ranges, the need to avoid unwarranted sentence disparities

20   among defendants with similar records who have been found

21   guilty of similar conduct and the types of sentences

22   available.

23          Does the Government wish to be heard on the

24   application of the factors set forth in 3553(a), request a

25   variance or otherwise make a sentencing recommendation?

1          MS. LARSON:  Yes, Judge, we do.

2          Your Honor, as the Court's aware, the Government

3   is seeking a sentence of 121 months in prison to be followed

4   by 120 months of supervised release and restitution for the

5   one victim who is seeking it in this matter.

6          I know that the Court often expresses how

7   difficult sentencing is.  However, when the Government's in

8   a position to recommend a variance to the Court, that's a

9   very difficult balancing act for us as well.  And this case

10  posed a lot of challenges as I thought about what I would

11  ask the Court for here today.

12         Starting with the nature and circumstances of the

13  offense, that strongly weighs in favor of a sentence much

14  closer to the Government's recommendation than the mandatory

15  minimum in this case.

16         The conduct here was just deplorable.  This

17  offender discussed the sexual abuse of very young children

18  with individuals that she met online.  She treated these

19  children who were being shown raped in various videos as

20  objects, not as the innocent victims that they were.  And

21  she did so for her own sexual gratification and enjoyment.

22  She paid no mind to their pain and suffering.

23         And we know again these images depicted very young

24  children; and she admitted that she distributed them because

25  it gave her sexual gratification to send those images, these

1   child sexual abuse images, to those that she believed had a

2   sexual interest in children.

3          When considering again how serious the offense is

4   and the necessary component of this sentence to promote

5   respect for the law and provide just punishment, it's

6   important to consider the damage that this type of behavior

7   does to all of the children that are depicted in each and

8   every image that this offender distributed without a care to

9   their circumstances, their suffering and how they must live

10  their lives knowing that these images will circulate forever

11  with the click of a button on a cell phone.

12         It was also concerning when considering a

13  deterrent effect that this offender made the statement

14  during her psychosexual evaluation that it never occurred to

15  her that the behavior she was engaging in was the

16  distribution of child pornography.

17         And out of everything that I know about this

18  offender that she has said, that's the one that makes

19  absolutely no sense to me.  It defies logic.  And I believe

20  that that was not a genuine statement by this offender.

21         When trying to figure out what the proper variance

22  was, it was a tough balance between this Defendant's history

23  and characteristics with the overwhelming need to protect

24  the public from future offenses of this offender.

25         Why I say that is because I did take into account



According to Dr. Flowers, it's harder to estimate that, and
females do recidivate at a lower risk [sic].  But he also
points out that all of the tests we commonly administer to
determine risk assessment and all of the research has
focused on male offenders.  So we're dealing with kind of a
blind spot as to the real risk to recidivate that she
presents.

      The Government was mindful of the fact that while
there can be criticism of the guidelines, this offender's
conduct also encompassed aggravating factors recognized by
the Sentencing Commission.

      That's the nature of what she collects.  That

1    involves very young children and the violent sexual assault

2    of those children; the degree in which she interacts with

3    other offenders online; as well as her other offensive

4    behavior, other sexual deviance.

5         In addition, we have an offender who was using an

6    end-to-end encrypted device all in an effort to evade law

7    enforcement detection.

8         And finally, it was difficult to come up with a

9    variance that made sense and appropriately protected the

10   public, given the expert analysis provided by Dr. Flower.

11   We have a credible outside expert opinion here which

12   recognizes that this is an offender with a paraphilic

13   disorder and also a belief system that is troubling.  He

14   notes that she is very tolerant of the sexual deviance of

15   others and was willing to commit criminal offenses herself

16   in order to stay a part of that community.

17        What was notable is, given everything Dr. Flower

18   knew about her history and characteristics, when considering

19   this he ruled that she was an average risk to a moderate

20   risk to reoffend, not a low risk to reoffend, which this

21   Court commonly sees with these types of offenders.

22        So those were -- that was the balance the

23   Government was trying to strike in determining how much of a

24   variance to recommend to this Court below the 151-month

25   bottom of the guidelines.

1          I'd like to finish with just addressing what seems
2     to be the two main defense arguments in the sentencing memo
3     that do not focus on the history and characteristics of this
4     offender.
5          First, there was a very clear attack on the
6     guidelines here.  The guidelines range I point out of 151 to
7     188 was just correctly calculated by the Court, Probation
8     and agreed to by both parties.  And it's a sentence by which
9     the Defendant admitted would be a reasonable circumstances
10    [sic], given all that is known about her criminal conduct.
11         Now, I understand that the Sentencing Commission's
12    report and notably the most recent one was in 2021 and I
13    believe what was focused on in the defense sentencing memo
14    were the earlier Sentencing Commission reports on this
15    guideline.
16         The criticism is that these enhancements no longer
17    provide a meaningful distinguishant [sic] between offenders.
18    What doesn't follow from that is the sentencing guidelines
19    for this horrific offense should be lower.  That especially
20    makes no sense when we know that offenders are getting worse
21    and worse over time; they're seeking out more violent
22    content; they're seeking out younger content; and they're
23    joining online communities, the danger which I believe the
24    Government outlined in its sentencing memo because it
25    reinforces this type of behavior; it normalizes the sexual

1    abuse of children; and it also helps to basically flood the

2    market with images and videos depicting the rape and sexual

3    assault of children.

4              As to unwarranted sentencing disparities, the

5    Government addressed this in our sentencing memo, however,

6    starting with the guidelines calculations, the first step to

7    avoiding these unwarranted disparities.

8              Also, as other courts have recognized, the 3553(a)

9    factors do lend to some disparities because sentences should

10   be individualized and courts should take into account all of

11   the factors under 3553(a) which are different depending on

12   the offender before the Court when fashioning their sentence

13   and the need to look at those convicted of the same offense.

14   The thrust of the sentencing memo submitted by the defense

15   only focuses on District of Columbia cases and not the

16   nationwide mandate, as commanded by 3553(a) and the

17   guidelines.

18             And so when we look at that, what we see is a

19   landscape in the District of Columbia about -- that are

20   mainly about older cases where the offenders did not plead

21   under the same guidelines, were not subjected to mandatory

22   minimum penalties; and so it very much is a comparison of

23   apples to apples, not -- sorry -- apples to oranges, not

24   apples to apples.

25             So in pointing out, as the Government has

1  submitted, the JSIN information says that the average length

2  of an offender with this total offense score and this

3  criminal history is 104 months with a median of 96, both of

4  which are much closer in line with the Government's

5  recommendation than what the defense seeks here, 60 months.

6          So for all those reasons, we are asking the Court

7  to impose a sentence of 121 months to be followed by 120

8  months of supervised release.

9          THE COURT:  Ms. Larson, a few questions for you.

10          First, on that last point, I appreciate the JSIN

11  information.  I thought that was useful.  Would it be

12  appropriate for me to be thinking about that as kind of the

13  heartland or certainly an average sentence here?  And so in

14  some ways, you're asking for a sentence that is not

15  terrifically, but certainly notably, above that.  Is that

16  kind of the appropriate way for me to be thinking about

17  this?

18          MS. LARSON:  I think that that gives the Court a

19  good benchmark nationwide.

20          It's very -- again, it's hard to say really --

21  what was part of the motivating factor, as I said, is that

22  we have concerning factors here that the Sentencing

23  Commission have indicated are aggravating factors not

24  currently taken into account by the guidelines and the fact

25  that we have an expert opinion saying she's that above to a

1    moderate risk to reoffend.

2              So those are things that really pushed, I think,

3    our request higher than 108 months, which is what I think

4    the median is in these cases.

5              THE COURT:  And on that point, I think I've heard

6    you be pretty critical of Dr. Flowers in the past.  Does --

7              MS. LARSON:  I don't think it's Dr. Flowers, but I

8    can list the other ones that have been in front of this

9    Court.  And that's exactly right.

10             THE COURT:  But it seems like you accept or

11   largely -- you're not taking issue with Dr. Flowers's report

12   here?

13             MS. LARSON:  I don't; one, because it was a very

14   thorough interview.  Two, it cited a lot of research,

15   collateral contacts, a review.  Actually, Dr. Flowers

16   reached out to me in this case to obtain the chats.

17             So it was a much more thorough opinion than we've

18   gotten in other cases where it's, This offender said "No

19   sexual interest in children," so therefore they don't have

20   that.  That's something that the Government has a hard time

21   accepting and crediting.  And I did not see that in

22   Dr. Flowers's report.

23             THE COURT:  And the final thing:  I think

24   Mr. Carroll in his sentencing recommendation suggested that

25   $3,000 was kind of an agreed-upon restitution amount.  Is

1    that your understanding as well?

2              MS. LARSON:  From my understanding, that was the

3    conversation that Mr. Carroll had with the victim's

4    attorney.  I was not a party to that.  We don't typically

5    engage in those types of negotiations.

6              The request was based on the materials as you saw

7    submitted to me.  But the Court has the ability to fashion a

8    restitution request as long as it's at least $3,000.

9              THE COURT:  Okay.  But you haven't gotten any

10   verification of that?

11             MS. LARSON:  I absolutely received an email to

12   that effect from the defense counsel, and I have absolutely

13   no reason to dispute that.  He asked if he could reach out

14   to the victim counsel, and that's of course appropriate and

15   his right.  I just did not participate in those

16   negotiations.

17             THE COURT:  Thank you.

18             Mr. Carroll, do you wish to be heard on the

19   application of the factors set forth in 3553(a), request a

20   variance or otherwise make a sentencing recommendation?

21             MR. CARROLL:  Does the Court consider this my

22   final allocution?

23             THE COURT:  Yes.  Now is your shot.

24             MR. CARROLL:  Okay, your Honor.

25             Your Honor, starting off, please don't think that

1    I'm minimizing what happened here or minimizing her

2    involvement.  I realize the crime committed here is very

3    serious.  But I'm advocating on behalf of my client here.

4           With Dr. Flowers's report, many times I'll ask the

5    Court and challenge it -- challenge the report if I think

6    it's that critical.  But I didn't think that report was that

7    critical in comparison to other reports that I've seen.

8           In addition to that, there were rotating

9    Ms. Mack-Smith in and out of solitary confinement every two

10   weeks.  And I wanted to get her out of Orange County as fast

11   as I could.  That was -- if I had asked for another report,

12   that could have kicked the can down the road another six

13   months.  And that's the last thing I wanted.

14          And, you know, Dr. Flowers has said in the report

15   that there was a moderate to average chance of her being a

16   recidivist.  But he does point out that all the reports are

17   based on men.  So I can't put much in that, when you're

18   saying the number of reports on women is so minimal that you

19   can't compare it.

20          But what is important in this case is the support

21   of the family.  And her husband knows exactly what went on

22   in this case and he has stood by her.  And they have a child

23   together and he's waiting for her when she comes home.

24          And many of my defendants, there's no family in

25   the courtroom.  And this was a very positive -- and he had

1    asked me from the start.  He says, "I want to be there."

2    And her grandmother, who raised her, wanted to be here as

3    well.  They wanted to bring their son, but I didn't think it

4    would be -- an 11-year-old does not need to hear this.

5                   THE COURT:  No.  I agree.

6                   MR. CARROLL:  So I said, Keep him there.

7                   She does have the support of her family.  She's

8    never been in trouble in her life.  She's always tried to

9    improve herself.  And this four to six weeks of her life is

10   an aberration compared to what the rest has happened in her

11   life.  I want the Court to consider that as well without,

12   like I said, trying to minimize what she did.

13                  The children in those pornography films, I know

14   they will have to deal with that the rest of their life.  I

15   can't undo that.  But I did speak with Deborah Bianco in

16   Seattle, and I've had other cases with her; and she's been

17   asking for 5,000 to 10,000 in these other cases.  And I

18   asked for the minimum and I explained her financial

19   circumstances, and she agreed to that.  So if I'm lying, I'm

20   dying, your Honor.

21                  While she's been in prison -- she's been there

22   three years now.  And with COVID restrictions, it's been

23   pretty much lockdown for three years.  I'd ask the Court to

24   consider that.

25                  When she was in Alexandria, that was the case as

1   well.  And she was over there in Alexandria with Devin

2   Miller, and I told her to stay away from her.  Don't talk to

3   her.  And she listened to me.

4         And then down in Orange County, Virginia, she was

5   down there as well.  I told her to stay away from her and

6   don't talk to her.  And she has minded her own business.

7         But like I said, they had rotated her in and out

8   of solitary confinement.  And she's been treated for

9   depression in the past.  And so they were tripling her dose

10  of Zoloft to get her through this.  So when she was out of

11  solitary confinement, she knew she was going back in two

12  weeks.  So this has had quite a toll on her as well.  I

13  would ask the Court to consider that.

14        She's been taking a new medicine called Prazilton,

15  I believe, P-R-A-Z-I-L-T-O-N.  That's for night terrors.  So

16  she's -- I'm asking for mercy on her, your Honor.  She

17  messed up.  She knows she messed up.  She'd like a second

18  chance in life and she would like to be involved in her

19  son's life.

20        And like I said, her husband has -- the most

21  important thing coming out of prison is a support system

22  waiting for you.  And she does have that.  I think 60 months

23  is enough in this case.  And I cited all those other cases

24  that have happened in the -- in the last few years, and I

25  didn't look beyond this jurisdiction because I don't think

1    that's that important.  I looked at the numbers nationally,

2    but it's this jurisdiction that counts.

3          And also, in the PACER system, if you go in the

4    report system and you drop off to the left on the menu for

5    18 USC 2255 -- 2252A and you drop it down, there were no

6    cases showing for the last three years when I was doing that

7    in PACER while trying to do the presentence report.  But I

8    had run these cases a long time ago thinking that this was

9    going to be part of my argument.

10          THE COURT:  Mr. Carroll, back on the support

11    system.

12          I mean, I agree with you.  It's kind of amazing

13    that Mr. Smith has been with her through this.  And that

14    certainly does -- it's not normal for these types of cases.

15          At the same time, I mean, based on Dr. Flowers's

16    report, I'm not sure this was necessarily a four- to

17    six-week blip, but maybe the -- anyway, the relationship

18    seems to be an unusual marriage.  And I'm not sure -- it

19    didn't stop this.  Why is next time going to be different?

20          MR. CARROLL:  I think she's learned from this,

21    your Honor.  She's never spent a day in jail in her life,

22    and now she's been locked up three years.  And she doesn't

23    want to go back.  She wants to do her time and go home.  And

24    she doesn't need any reminder of what jail is like.  If

25    anything, that would be an incentive after what's happened

1    to her to not get in trouble again.

2              And I was also going to ask that -- I'm asking for

3    60 months, your Honor.  I think that's consistent.  I tried

4    running PACER for this courthouse for the number of sex

5    offense cases in the last two or three years, and it

6    showed -- in the last year there were only 14 sex offense

7    cases.  None of them were listed or what their sentences

8    were.

9              And also, I ran it in Baltimore as well, Baltimore

10   and Greenbelt.  And it was consistent with that.  And

11   surprisingly enough, I was really shocked, but I guess with

12   COVID, the District of Maryland and District of Columbia

13   have only had 23 trials apiece in the last year, which --

14             THE COURT:  I find that hard to believe.  I had

15   nine trials myself last year --

16             MR. CARROLL:  Well, if you go on the --

17             THE COURT:  -- including with Ms. Bond.

18             MR. CARROLL:  -- Sentencing Commission website,

19   that's what it says.  That's the latest material.

20             THE COURT:  Maybe not entirely accurate.

21             MR. CARROLL:  But I would ask that she be sent to

22   FCI Alderson in West Virginia and ask that you cap

23   restitution at $3,000, ask that you make no restitution on

24   the Justice For Victims Act.

25             I would ask that you -- for restitution payments

1    while in prison, I would ask that you cap it at $5 because

2    she's not going to have -- there may or may not be a job up

3    there, and I don't know if her husband has the money to be

4    sending her money all the time because he's paying for the

5    house and taking care of their son as well.

6           The reason I'm asking for so low and not for no

7    payments, if you don't make payments in a restitution

8    program, your public safety factor doesn't change and you

9    don't get improvements within the prison behavioral

10   improvements.  And also, that can cut into your time when

11   you're eligible for a halfway house, if you have not been

12   participating in a restitution program.  So it's a feather

13   in your cap if you're participating in a restitution

14   program.

15          And the prisons don't like it because they can use

16   it as a cudgel over an inmate if they want to.  But if the

17   Court sets it at a low rate like that, they will honor what

18   the Court has to say and the prisoner will get the benefit

19   of that and it'll lower their public safety factor from the

20   time they're -- and help him towards a halfway house and

21   also time towards the first step back.

22          And, your Honor, I would be asking for the mercy

23   of the Court and to give her a sentence of 60 months.  She

24   knows what she did is wrong.  And I don't think that

25   she'll -- having the support she has, that there will be any

1      problem with her reoffending.

2              THE COURT:  Thank you, Mr. Carroll.

3              Ms. Mack-Smith, you have the right to make a

4      statement or present any information to mitigate the

5      sentence.  Would you like to say anything that you would

6      like me to consider before imposing sentence?

7              THE DEFENDANT:  Yes, your Honor.

8              First, I'd like to say I'm very sorry to all of

9      the victims in this case.  I can't express how sorry I am.

10     I apologize to my family.  I do have a support system.  And

11     I'm extremely sorry to them as well.  I'd like to apologize

12     to this Court because this is very out of my character.

13             But I take full responsibility for my actions and

14     what I did.  And I would just like to ask on my behalf and

15     as my attorney said for lenience in this case.  I've never

16     been to jail before, and this experience has permanently

17     changed my life.  Changed my life.

18             So I just would like to say, I am extremely sorry.

19     And I do apologize.  That's all.

20             Thank you, your Honor.

21             THE COURT:  Thank you, ma'am.

22             I'm going to take a couple moments to consider

23     this.  We'll take a quick break.

24             (Thereupon a recess was taken, after which the

25     following proceedings were had:)

1        THE COURT:  Ma'am, if you could approach the

2   podium.

3        I've assessed the particular facts of this case in

4   light of the relevant 3553(a) factors and I now want to

5   provide remarks for the record and for you, Ms. Mack-Smith,

6   about my considerations in regard to the various relevant

7   factors.

8        This is an extremely troubling case.  Over the

9   course of several weeks in 2020, you sent a man numerous

10   videos of child pornography.  These videos include very

11   young children, including toddlers, being raped and

12   otherwise sexually abused.

13        As Ms. Larson points out, you also were using

14   end-to-end encryption, which is a relatively sophisticated

15   technique that is suggestive of an intent to avoid law

16   enforcement detection and some knowledge and experience with

17   what you're doing.

18        According to the report from Dr. Flowers, this

19   incident was one of a series of extramarital relationships

20   you had with sexually deviant men that involved child

21   pornography.  You reported that you had acquired these

22   videos from another man you had met online.  Rather than

23   reporting him or breaking off contact with him, you

24   participated in an online chat group that discussed and

25   exchanged pornography.

1          You admitted to uploading child pornography to

2     remain in the group and you claimed that it, quote, "never

3     crossed my mind that this is me distributing kiddie porn."

4          That's exactly what you were doing.  By adding Eli

5     to the chat group, by sharing these videos and by playing

6     into these men's fantasies of pedophilia, texting things

7     like, "Which of the littles videos is your favorite?  You

8     like the squirming?  The ones where they can't take it?"

9     you normalized, encouraged and propagated the plague of

10    child pornography our culture is facing.

11          While I recognize there's no suggestion that you

12    created any of this pornography or abused any of the

13    children yourself, the evidence is clear, including from

14    Pia's parents in this case, that the continued distribution

15    of child pornography has devastating and lasting impacts on

16    the victims and their families.

17          They live haunted by the knowledge that these

18    videos of them at their most vulnerable, most humiliating

19    and degrading moments continue to be passed from one pervert

20    to another pervert, including quite possibly people they

21    interact with at school, at work and on the streets.  This

22    is the harm that you are in part responsible for.

23          On the other hand, I recognize the significant

24    mitigating factors relating to your history and

25    characteristics.  This is your first criminal conviction.

1   And you have a long and productive employment history.  Your

2   attorney has submitted a number of letters on your behalf,

3   including, most strikingly, given what has happened, from

4   your husband, that portray you as a rock in your family,

5   someone who is kind and has integrity.

6        I've also considered the trauma you experienced in

7   your childhood, most relevantly the sexual abuse you also

8   suffered.  While I don't think this in any way excuses your

9   actions in this case, I do think your own victimization here

10  does help explain what happened.  Dr. Flowers writes that

11  the repression of feelings of victimization accomplished by

12  focusing on the feelings of the perpetrator is clinically

13  referred to as identification with the aggressor.  I think

14  that's part of what was going on here.

15       I also appreciate your comments of remorse here.

16  I think that they are sincere, and they do encourage me to

17  think that you realize how problematic this behavior was and

18  that you will not do it again.

19

20

21

22

23

24

25





10          I've also considered Mr. Carroll's thoughtful

11     discussion of the sentencing guidelines for child

12     pornography in his memorandum in aid of sentencing.

13     Ultimately, however, I have no policy disagreement with

14     these guidelines.

15          Congress, not the Sentencing Commission, has

16     ultimate authority to set sentencing parameters in federal

17     cases.  And the fact that Congress has repeatedly intervened

18     to raise and dictate the guidelines in this particular area

19     shows that Congress recognizes the horrific impact child

20     pornography has on its victims and on our culture.  This is

21     a judgment call that Congress is free to make, and I don't

22     take issue with it.

23          It is certainly true that these guidelines include

24     factors that arguably result in double-counting.  That is

25     not unique in this guideline, and I think it ultimately

1    underscores the dangerousness of child pornography and the

2    need for the criminal justice system to clearly penalize

3    these crimes in light of the proliferation of child

4    pornography due to the internet.

5              I also reject his proposed unwarranted sentencing

6    disparities analysis.  Although it's certainly true that a

7    number of child pornography cases in this district have

8    resulted in significant downward variances, I think the

9    Government's argument that I should be looking on a more

10   nationwide basis is correct.

11             As the Government notes, recent data for

12   defendants who have this guideline and your offense level

13   and criminal history score were on average sentenced to 104

14   months.  I think that figure is much more relevant than

15   cherry-picked cases from this district, especially where I

16   don't have the necessary details to know what specific

17   factors led to the sentences in particular cases.

18             And I take Ms. Larson's point that many of those

19   cases probably involved the old guidelines, and in any event

20   that you agreed at the time of your plea that a sentence in

21   the range of 151 to 188 months is reasonable.

22             Dr. Flowers's evaluation also gives me some cause

23   for concern.  He points to indications of your interest in

24   pedophilia, sexual sadism and sexual masochism and suggests

25   that you pose at least a moderate or average risk of

1   recidivism compared to other women who commit similar

2   offenses.

3          He notes that you've kept the nature of the

4   charges from any of your family members, which is

5   understandable, but also suggests potential to downplay what

6   happened here and thereby allow it to repeat itself.

7          MR. CARROLL:  Your Honor, I think it was more out

8   of embarrassment.

9          THE COURT:  Nonetheless, I can draw conclusions

10  from what is happening.

11         He also candidly admits his normal tools and

12  methods of analysis are not well calibrated for female

13  sexual offenders.

14         I conclude, considering his report and all of the

15  evidence available, that there are reasons for concern about

16  recidivism here.  And that factors into my sentence.

17         The main driver of the sentence, though, is

18  providing an appropriate punishment for this truly appalling

19  crime that continues to victimize the children affected by

20  it.

21         Speaking of those victims, I will award $3,000 in

22  restitution requested by victim Pia for the reasons set

23  forth in the Government's request and given Mr. Carroll's

24  averment that her counsel has agreed that $3,000 is

25  appropriate.

1          I disagree with Mr. Carroll's suggestion that I

2     should vary downward based on the COVID lockdown.  That's an

3     argument that's been made in many of the cases before me

4     over the last couple years, and I think in every case I've

5     rejected that.  While I certainly am open to considering it

6     in each case, I think COVID has been difficult for all of

7     us, whether we were in custody or not.  And I think that the

8     difficulties in custody, while they are significant, are not

9     ones that are appropriately offset by a lighter sentence.

10    Or at least I disagree with that in this case.

11         Ultimately, ma'am, you're going to be spending a

12    number of years in prison.  But this is not the last chapter

13    in your life.  I hope you choose now that you are never

14    going to return to the types of relationships and behavior

15    that got you into this situation.  You have friends and

16    family who love and care about you.  I hope you rely on them

17    and prove that their confidence in you was not mistaken.

18         I will now impose the sentence.

19         It is the judgment of the Court that you, Shemara

20    Shay Mack-Smith, are hereby committed to the custody of the

21    Bureau of Prisons for a term of 108 months on Count 1.  You

22    will also serve a ten-year term of supervised release and

23    you must pay a $100 special assessment.

24         You must pay restitution in the amount of $3,000

25    payable to minor victim Pia.

1            Within 72 hours of release from custody, you shall

2    report in person to the probation office in the district to

3    which you are released.

4            While on supervision, you shall abide by the

5    following mandatory conditions as well as the standard

6    conditions of supervision listed in the most recent revision

7    of the Judgment in a Criminal Case Form AO 245B, which were

8    imposed to establish the basic expectations for your conduct

9    while on supervision.

10           The mandatory conditions include:  You must not

11   commit another federal, state or local crime; you must not

12   unlawfully possess a controlled substance; you must refrain

13   from unlawful use of a controlled substance; you must submit

14   to one drug test within 15 days of placement on supervision

15   and at least two periodic drug tests thereafter; and you

16   must cooperate in the collection of DNA as directed by the

17   probation office.

18           You must also comply with the following special

19   conditions:  You must comply with the requirements of the

20   Sex Offender Registration and Notification Act as directed

21   by your probation officer, the Bureau of Prisons or any

22   state sex offender registration agency in the location where

23   you reside or work.

24           You must participate in a sex offense-specific

25   assessment.  You must pay a percentage of the cost of the

1   assessment as determined by the probation office.

2          You must participate in a sex offender treatment

3   program and follow the rules and regulations of that

4   program.

5          You must submit to periodic polygraph testing at

6   the discretion of the probation office as a means to ensure

7   that you're in compliance with the requirements of your

8   supervision or treatment program.

9          You must not have direct contact with any child

10  you know or reasonably should know to be under the age of 18

11  without the permission of the probation office.  If you do

12  have any direct contact with any child you know or

13  reasonably should know to be under the age of 18 without the

14  permission of the probation office, you must report this

15  contact to the probation officer within 24 hours.

16          Direct contact includes written communication,

17  in-person communication or physical contact.  Direct contact

18  does not include incidental contact during ordinary daily

19  activities in public places.

20          You must allow the probation office to install

21  computer-monitoring software on any computer as defined in

22  18 USC 1030(e)(1) that you use.

23          You must submit your computers as defined in 18

24  USC 1030(e)(1) or other electronic communications or data

25  storage devices or media to a search.  You must warn any

1    other people who use these computers or devices capable of

2    accessing the internet that the devices may be subject to

3    searches pursuant to this condition.

4           The probation officer may conduct a search

5    pursuant to this condition only when reasonable suspicion

6    exists that there's a violation of a condition of

7    supervision and that the computer or device contains

8    evidence of this violation.  Any search will be conducted at

9    a reasonable time and in a reasonable manner.

10          You must provide the probation officer access to

11   any requested financial information and authorize the

12   release of any financial information.

13          The probation office may share financial

14   information with the United States Attorney's Office.

15          You must submit to substance abuse testing to

16   determine if you've used a prohibited substance.  You must

17   not attempt to obstruct or tamper with testing methods.

18          The Court finds that you do not have the ability

19   to pay a fine, and therefore waives imposition of a fine.

20          The Court also finds that you do not have the

21   ability to pay the $5,000 assessment pursuant to the Justice

22   For Victims of Trafficking Act of 2015 and therefore waives

23   imposition of this assessment.

24          This is different from the restitution to minor

25   victim Pia, which I am ordering to be paid in this case.

1      The financial obligations are payable to the Clerk

2   of the Court for the U.S. District Court for the District of

3   Columbia.

4      Within 30 days of any change of address, you shall

5   notify the Clerk of the Court of the change until such time

6   as the financial obligation is paid in full.  Restitution

7   payments shall be made at a rate of no less than $200 per

8   month.

9      The probation office shall release the presentence

10  investigation report to all appropriate agencies, which

11  includes the United States Probation Office in the approved

12  district of residence, in order to execute the sentence of

13  the Court.  Treatment agencies shall return the presentence

14  report to the probation office upon the Defendant's

15  completion or termination from treatment.

16     Pursuant to 18 USC 3742, you have a right to

17  appeal the sentence imposed by this Court if the period of

18  imprisonment is longer than the statutory maximum.

19     If you choose to appeal, you must file any appeal

20  within 14 days after the Court enters judgment.

21     As defined in 28 USC 2255, you also have the right

22  to challenge the conviction entered or sentence imposed if

23  new and currently unavailable information becomes available

24  to you or on a claim that you received ineffective

25  assistance of counsel in entering a plea of guilty to the

1    offense of conviction or in connection with sentencing.

2          If you're unable to afford the cost of an appeal,

3    you may request permission from the Court to file an appeal

4    without cost to you.

5          Ms. Larson, what's your position on allowing the

6    Defendant to maintain contact with her son?

7          MS. LARSON:  Judge, typically, that's -- I don't

8    have a problem with it in this particular case, given that

9    she'll be supervised.  And that'll be a decision for the

10   probation officer, parole officer, upon her release about

11   what type of contact is appropriate.

12         THE COURT:  Well, I'm inclined to waive that

13   contact restriction as to her son.  Are you objecting to

14   that?

15         MS. LARSON:  No, Judge, especially given the fact

16   that any contact will be supervised for the next however

17   many years.  And then I believe her son will no longer be a

18   minor.

19         THE COURT:  So I am going to --

20         I take it you don't object?

21         MR. CARROLL:  That's correct, Judge.

22         THE COURT:  So do you want -- do we use initials?

23   How should we do this, Ms. Willett, to make clear that her

24   son is not a minor within the contact restrictions?

25         Ma'am, if you would just step back, so the

1    probation officer can address me.

2            THE PROBATION OFFICER:  So, your Honor, I would

3    recommend including that in the body of the contact

4    restriction condition.  Just indicate that that condition is

5    waived for the Defendant's contact with her own child.  I

6    can provide the courtroom deputy with the language for that.

7            THE COURT:  Great.  We'll do that.

8            THE PROBATION OFFICER:  Thank you, your Honor.

9            THE COURT:  I will make a recommendation that the

10   Defendant be held in FCI Alderson.

11           Are there any objections to the sentence imposed

12   that are not already noted on the record?  Ms. Larson?

13           MS. LARSON:  No, your Honor.

14           THE COURT:  And Mr. Carroll?

15           MR. CARROLL:  No, your Honor.  I'd like to add a

16   couple things.

17           Could your Honor put a cap on the restitution

18   payment?

19           THE COURT:  I'm not going to do that.

20           MR. CARROLL:  And could your Honor recommend her

21   for the RDAP program, Residential Drug and Alcohol Program?

22   You had stated when she gets out you want her tested.  Maybe

23   she can benefit from that program while she's there.

24           THE COURT:  I don't think there's a basis for me

25   to recommend that on the basis of the PSR.

1          MR. CARROLL:  Very well, your Honor.

2          THE COURT:  Anything further for the Government?

3          MS. LARSON:  No, your Honor.

4          THE COURT:  Ma'am, you're remanded to the custody

5     of the Attorney General.  Good luck to you, ma'am.

6          THE DEFENDANT:  Thank you, your Honor.

7          (Proceedings concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE

1

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4       certify that the foregoing constitutes a true and accurate

5       transcript of my stenographic notes, and is a full, true,

6       and complete transcript of the proceedings produced to the

7       best of my ability.

8

9

10                   Dated this 2nd day of July, 2023.

11

12              /s/ Lisa Edwards, RDR, CRR
                Official Court Reporter
13              United States District Court for the
                  District of Columbia
14              333 Constitution Avenue, Northwest
                Washington, D.C. 20001
15              (202) 354-3269

16

17

18

19

20

21

22

23

24

25